UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO,<br>　　　　Plaintiff<br><br>　　v.<br><br>MONSANTO CO., SOLUTIA INC., PHARMACIA, LLC, and UNIVAR SOLUTIONS INC.,<br>　　　　Defendants | No. 23-cv-15357<br><br>Judge Jeremy C. Daniel |

### ORDER

The plaintiff's motion for remand is granted. This case is hereby remanded to state court. Civil case terminated.

### STATEMENT

The defendants claim that removal is proper because (1) the plaintiff's claims arise, in whole or in part, on a federal enclave; (2) diversity jurisdiction exists between all non-fraudulently joined parties; and (3) the plaintiff's claims implicate federal common law. I disagree and remand the case to state court.

The plaintiff alleges that the defendants manufactured and distributed polychlorinated biphenyls ("PCBs") that have contaminated areas in and around Chicago, Illinois. Efforts to mitigate that contamination are expensive, and the plaintiff seeks to shift at least some of the costs of mitigation to the defendants. Some of the mitigation efforts are required by the Illinois Environmental Protection Agency, which limits the amount of PCBs that the plaintiff can discharge into Lake Michigan. Compliance with the IEPA's limitations requires the plaintiff to filter PCBs from stormwater that drains from Chicago into Lake Michigan. These limitations do not just apply to the plaintiff, as other lakefront localities in Illinois are subject to the Lake Michigan Total Maximum Daily Load ("TMDL") for PCBs.

According to the defendants, because discharges of PCBs from Naval Station Great Lakes contributed to the establishment of the TMDL, and because Naval Station Great Lakes is a federal enclave, the plaintiff's claims arise, at least in part, from events that occurred on a federal enclave. I disagree. While discharges of PCBs from Naval Station Great Lakes may have contributed to the establishment of the TMDL, it does not follow that the establishment of the TMDL gave rise to the plaintiff's tort

claims. If that were the case, federal jurisdiction would exist anytime actions on a federal enclave contribute to some new law or regulation. According to the complaint, it was the defendants' manufacture and distribution of PCBs in and around Chicago that led to the contamination at issue. Nothing in the complaint or the pleadings suggest that the contamination in Chicago came, directly or indirectly, from Naval Station Great Lakes. Consequently, no part of the events giving rise to the plaintiff's claims occurred on a federal enclave. Therefore, federal enclave jurisdiction is not a basis for removal.

Neither is diversity jurisdiction. The defendants claim that the plaintiff fraudulently joined Defendant Univar Solutions Inc. "Fraudulent joinder is difficult to establish— a defendant must demonstrate that, 'after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.'" *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) (citation omitted). The defendants claim that Univar has been fraudulently joined because all of the plaintiff's claims against Univar are subject to dismissal under the Illinois Distributor Statute, 735 ILCS 5/2-621. This argument fails because "[n]egligent product liability claims are not strict liability claims and therefore are not subject to dismissal under section 2-621." *Cassidy v. China Vitamins, LLC*, 2017 IL App (1st) 160933, ¶ 39, 89 N.E.3d 944, 955, *aff'd,* 2018 IL 122873, ¶ 39, 120 N.E.3d 959. Thus, even if the plaintiff could not sustain a strict liability claim against Univar, any of the plaintiff's remaining state law claims could defeat the defendants' fraudulent joinder claim.

The defendants further contend that the plaintiff's "conclusory and duplicative" claims, including negligence, nuisance, and trespass claims, have no reasonable possibility of succeeding against Univar. This statement, conclusory in itself, does not demonstrate that the plaintiff could not establish a cause of action against Univar. And the defendants did not explain why the plaintiff's remaining state law claims were deficient.

Looking at some of the plaintiff's remaining state law claims show that the defendants have not met their burden to show fraudulent joinder. "Under Illinois law, '[a] duty to warn exists where there is unequal knowledge, actual or constructive of a dangerous condition, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given.'" *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) (citation omitted). Here, the plaintiff alleges that Univar (actually, its predecessor) was a large and sophisticated chemical distributor with access to published research concerning the dangers posed by PCBs; that Univar knew or should have known about the risks posed by PCB contamination; and that Univar failed to warn the plaintiff, customers, and others.

The defendants counter these allegations with an affidavit from an employee who worked at Univar (and its predecessor) for twenty-six years. In that affidavit, the employee states, "to the best of my knowledge, at no point in time did Univar, as a reseller/distributor of PCBs, undertake its own investigation into PCB's alleged toxicity, volatility, tendency to bioaccumulate, inability to be contained or environmental persistence." But this statement does not meet the plaintiff's allegations, which reference other sources of information and the sophistication of Univar as a distributor of PCBs. Even if it did, I must resolve all issues of law and fact in the plaintiff's favor at this juncture. The allegations support an inference that Univar learned of the dangers posed by PCBs elsewhere, yet failed to warn. *See, e.g.*, *Hawkins v. Boehringer Ingelheim Pharm.*, 20 C 6509, 2021 WL 4498652, at*3 (N.D. Ill. Jan. 19, 2021) (concluding that actual knowledge is a permissible inference from scientific studies known within an industry in support of a common law negligence claim). As such, the defendants have not met their burden when it comes to fraudulent joinder.

The defendants also claim that this case arises under federal common law because the plaintiff's "claims concern exactly the type of issues involving water in its interstate or navigable aspects that courts have found necessary to be decided by a federal court." As with their federal enclave claims, the defendants try to make this case into something that it's not. The cases the defendants rely on each involved efforts by one or more parties to take steps to protect bodies of water. For instance, in *Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91 (1972), four cities sued to prohibit and prevent others from discharging inadequately treated sewage into Lake Michigan. In *Michigan v. U.S. Army Corps of Engineers*, 758 F.3d 892, 894 (7th Cir. 2014), five states and the Grand Traverse Band of Ottawa and Chippewa Indians sued to force the defendants in that case to take steps to prevent an invasive species from reaching Lake Michigan. Here, steps to protect Lake Michigan have already been taken with the enactment of the TMDL. The conduct at issue here concerns the costs associated with complying with the TMDL and other efforts to mitigate PCB contamination in Chicago. This conduct all takes place on land, which renders the cases the defendants rely on inapposite. Accordingly, federal common law does not provide a basis for removal.

Date: 2/12/2024

JEREMY C. DANIEL
United States District Judge

3